UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

JUSTIN MONTGOMERY,

    Defendant.
_____/

Case No: 24-20389

Honorable Nancy G. Edmunds

**OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS [20] AND SUPPRESS [21]**

Defendant Justin Montgomery has been charged with two counts of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (ECF No. 14.) The matter is before the Court on Defendant's motion to dismiss the indictment (ECF No. 20) and Defendant's motion to suppress evidence seized during an inventory search of his vehicle relating to Count II of the indictment (ECF No. 21). The Government filed responses opposing each motion (ECF Nos. 28; 29.) The Court held a hearing on the motions on January 27, 2025.

In his motion to dismiss, Defendant argues § 922(g) is unconstitutional on its face and as applied to him. (ECF No. 20, PageID.49-59.) In his motion to suppress, Defendant argues the stop of his vehicle, the decision to impound his vehicle, and the inventory search of his vehicle were unconstitutional. (ECF No. 21, PageID.65-71.) For the reasons below, the Court DENIES Defendant's motions.

**I.    Background**

1

This case arises out of events occurring on July 8, 2024. (ECF No. 21, PageID.61.) That day, Detroit Police officers received a call describing an individual wearing a black mask driving a burgundy Chevrolet Impala up and down Spring Garden Street near Kelly Road. *Id.* at 65. The Government argues the oddity of a person wearing a black ski mask in July gave rise to a suspicion of criminal activity. (ECF No. 29, PageID.186-89.) Responding to the call, officers located Defendant driving a burgundy Impala a few blocks away near Seven Mile Road and Hayes Street. (ECF No. 21, PageID.61.) Officers ran the license plate through the Law Enforcement Information Network ("LEIN"), and that search revealed the vehicle was uninsured. *Id*. at 65. The officers then initiated a traffic stop, which the Government claims was constitutionally valid based on either probable cause that Defendant committed a traffic violation for not having insurance or a reasonable suspicion that Defendant was engaged in criminal activity. (ECF No. 29, PageID.188.) During the traffic stop, officers asked for Defendant's driver's license, which was also run through the LEIN system. (ECF No. 21, PageID.65.) That check showed an outstanding arrest warrant for Defendant. *Id.* Defendant was then arrested, and his vehicle impounded after the officers conducted an inventory search of the car. *Id.* at 66. During the search of Defendant's vehicle, officers recovered a 9mm pistol. *Id.*

II.     **Motion to Dismiss Legal Framework**

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held that the Second Amendment codified a pre-existing "individual right." This right protects the ability to keep, for "lawful purposes," the kinds of weapons in common use, like those used for self-defense. *Id*. at 624-25. Following *Heller*, courts of appeals

2

developed a two-step means-end test when considering the constitutionality of firearm regulations. *See New York State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 18 (2022). Under that test, courts asked whether the challenged law burdens conduct that falls within the scope of the Second Amendment right, as historically understood. *See id.* If the answer was yes or was unclear, the second step was to apply the appropriate level of scrutiny to assess the strength of the government's justification for regulating the exercise of the right. *Id.* at 18-19.

In *Bruen*, the Supreme Court rejected the means-end framework, stating that it involved "one step too many," and set forth a new text-and-history test. *Id.* at 19. Under this test, courts must first ask whether the plain text of the Second Amendment covers an individual's conduct—in other words, whether the individual is among "the people" as used in the Second Amendment. *Id.* at 24, 31-32. If the answer is yes, "the Constitution presumptively protects that conduct" and the regulation is not constitutional simply because it promotes an important interest. *Id.* at 17. Instead, the government must affirmatively prove "that the regulation is consistent with this Nation's historical tradition of firearm regulation." *Id.*

Although *Bruen* overturned the framework courts had developed based on *Heller*, some courts continued to reject as-applied constitutional challenges to § 922(g)(1) by relying on the dicta in *Heller*, 554 U.S. at 626, which states that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons." *See, e.g.*, *United States v. Gay*, 98 F.4th 843, 846 (7th Cir. 2024). The Sixth Circuit, however, recently disagreed, finding that it must abide by "*Bruen*'s mandate to consult historical analogs." *See United States v. Williams*, 113 F.4th 637,

3

648 (6th Cir. 2024). To succeed on a challenge that § 922(g) is invalid on its face, Defendant must show that "there exists 'no set of circumstances under which the Act would be valid.'" *Id.* at 657 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)). After applying the text-and-history test, the *Williams* court concluded "that § 922(g)(1) is constitutional on its face and as applied to dangerous people." *See id.* at 662-63. In an as-applied challenge, the burden rests on the defendant to show that he is not dangerous. *Id.* at 662.

The *Williams* court noted that criminal offenses can be divided into three categories. *Id.* at 663. The first category encompasses "crime[s] against the body of another human being, including (but not limited to) murder, rape, assault, and robbery." *Id.* The second category involves "crime[s] that inherently pose[] a significant threat of danger, including (but not limited to) drug trafficking and burglary." *Id.* "An individual in either of those categories will have a very difficult time, to say the least, of showing he is not dangerous." *Id.* The third and "more difficult category involves crimes that pose no threat of physical danger, like mail fraud, tax fraud, or making false statements." *Id.* The court stated that "many of these crimes don't make a person dangerous." *Id.* at 659. When making a finding regarding dangerousness, courts "must focus on each individual's specific characteristics," and in doing so, "may consider a defendant's entire criminal record—not just the specific felony underlying his § 922(g)(1) conviction" "as well as other judicially noticeable information." *See id.* at 657-660. The *Williams* court "recognize[d] that courts may wish to consider information beyond criminal convictions when assessing a defendant's dangerousness" but left "the question of what information is relevant for another day." *Id.* at 658 n.12.

4

**III.     Analysis**

Defendant argues § 922(g)(1) is unconstitutional on its face because it is not consistent with our Nation's tradition of firearm regulation. (ECF No. 20, PageID.50-57.) As mentioned above, the Sixth Circuit held that § 922(g)(1) is valid on its face. *Williams*, 113 F.4th at 657. The result in *Williams* is binding on this Court. Accordingly, Defendant's facial challenge is denied.

The Court also finds Defendant is dangerous and § 922(g)(1) is constitutional as applied to him. In his criminal record, Defendant has two felony drug convictions, two convictions for possession of a firearm as a felon, and three domestic violence convictions, one of which was a felony. (ECF No. 20, PageID.58.) This extensive record reflects crimes fitting into the first and second categories of crimes described in *Williams*. 113 F.4th at 663. Defendant has not met his heavy burden to show he is not dangerous.

**IV.     Motion to Suppress Legal Framework**

The Fourth Amendment protects "'[t]he right of the people to be secure in their persons, houses, papers, and effects,' including vehicles, 'against unreasonable searches and seizures.'" *United States v. Snoddy*, 976 F.3d 630, 633 (6th Cir. 2020) (quoting U.S. Const. amend. IV). To validly stop a vehicle without a warrant, an officer must have probable cause that the driver committed a civil traffic violation or reasonable suspicion that they committed a criminal traffic violation. *Cruise-Gulyas v. Minard*, 918 F.3d 494, 496 (6th Cir. 2019); *Whren v. United States*, 517 U.S. 806, 810 (1996). "Probable cause exists if the 'facts and circumstances within the officer's knowledge [] are sufficient to warrant a prudent person . . . in believing . . . that the suspect committed . . . an offense.'" *King v. City of Rockford*, 97 F.4th 379, 391 (6th Cir. 2024) (alteration in original) (quoting

5

*Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016)). A driver has no constitutionally protected privacy interest in their publicly displayed license plate information. *United States v. Ellis*, 462 F.3d 557, 561 (6th Cir. 2006).

Once an officer has initiated a lawful stop, they may ask a suspect for identification so long as doing so is "reasonably related in scope to the circumstances which justified [the stop] in the first place." *Hiibel v. Sixth Jud. Dist. Ct. of Nev.*, 542 U.S. 177, 185-87 (2004) (quoting *United States v. Sharpe*, 470 U.S. 675, 682 (1985)). The discovery of a valid, outstanding arrest warrant provides officers an independent basis to make an arrest. *See Utah v. Strieff*, 579 U.S. 232, 240 (2016) ("[the officer]'s arrest of [defendant] was a ministerial act that was independently compelled by the pre-existing warrant"). When an arrest is made, "[o]fficers exercising their discretion to impound a vehicle must do so 'according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity.'" *Snoddy*, 976 F.3d at 634 (quoting *United States v. Jackson*, 682 F.3d 448, 454 (6th Cir. 2012)). An inventory search of an impounded vehicle can be lawfully conducted if it is not "undertaken 'for purposes of investigation,' and it must be conducted 'according to standard police procedures.'" *United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007) (quoting *United States v. Lumpkin*, 159 F.3d 983, 987 (6th Cir. 1998)).

**V.     Analysis**

Here, the LEIN search of Defendant's license plate, as testified to by Officer Urbina, gave the officers probable cause to believe Defendant was driving without insurance in violation of Michigan law and justified the stop. *See* Mich Comp. Laws §§ 500.3101, .3102, 257.328. The officers asking for Defendant's driver's license was

6

reasonably related in scope to their basis for initiating the stop, and the ensuing discovery of an outstanding arrest warrant gave them a lawful basis to effectuate an arrest. Further, Detroit Police impound procedures only allow officers to let individuals take custody of a car "as long as [they] would not violate any law . . . by doing so." (ECF No. 29-5, PageID.225.) The officers had a good-faith belief the vehicle was uninsured, and, therefore, could not be driven legally by anyone. As for the motive for the inventory search, Officer Urbina testified that he had no reason to believe there was anything illegal in the vehicle before searching it. Officer Urbina also indicated Detroit Police policy guided the impound and search of Defendant's vehicle. Based on this record, the Court finds the inventory search was done incident to the arrest and impound pursuant to Detroit Police policy. (*See* ECF No. 29-5, PageID.228.)

## VI.  Conclusion

For the foregoing reasons, the Court DENIES Defendant's motions to dismiss and suppress.


SO ORDERED.

                         s/ Nancy G. Edmunds
                         Nancy G. Edmunds
                         United States District Judge

Dated: February 7, 2025


I hereby certify that a copy of the foregoing document was served upon counsel of record on February 7, 2025, by electronic and/or ordinary mail.

                         s/ Marlena Williams
                         Case Manager